UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT HENRY GRIFFIN, JR.,

                Petitioner,

vs.                                Case No. 3:06-cv-90-J-12MCR

WALTER A. MCNEIL,
et al.,

                Respondents.
_____

ROBERT HENRY GRIFFIN, JR.,

                Petitioner,

vs.                                Case No. 3:06-cv-459-J-12JRK

WALTER A. MCNEIL,
et al.,

                Respondents.
_____

## ORDER DENYING THE PETITIONS[1]

## I. Status Case No. 3:06-cv-90

Petitioner Robert Henry Griffin, Jr., an inmate of the Florida penal system proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on January 26, 2006, pursuant to the mailbox rule. Petitioner challenges his 2001 state court (Clay County) judgment of conviction on charges of failure of defendant to appear on bail on two grounds:[2] (1) the trial court erred in

_____

[1] Although Petitioner's Motion for Consolidation was denied, Case No. 3:06-cv-459-J-12JRK was transferred to the undersigned and the cases have traveled together in order to be decided by the same United States District Judge.

[2] Petitioner has abandoned his remaining claims. See the Court's Order (Doc. #20).

denying a motion to dismiss based on the Interstate Agreement on Detainers (hereinafter IAD), in violation of the right to due process of law guaranteed by the Sixth and Fourteenth Amendments, and (2) the ineffective assistance of counsel for failure to file a motion to dismiss under Article IV of the IAD, in violation of the right to due process of law as guaranteed by the Sixth and Fourteenth Amendments.

On July 7, 2006, Respondents filed their Answer to Petition for Writ of Habeas Corpus (Doc. # 10) (hereinafter Answer).  It was followed, on July 14, 2006, with an Appendix (Doc. #13). (hereinafter App.).  Petitioner's Reply Brief (Doc. #14) was filed on July 25, 2006, pursuant to the mailbox rule.  See the Court's Order (Doc. #7).   Petitioner filed an Appendix (Doc. #15) (hereinafter Petitioner's Exhibit).

## II.  Status Case No. 3:06-cv-459

Petitioner initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on May 16, 2006, pursuant to the mailbox rule.  He challenges his 2001 state court (Clay County) judgment of conviction for burglary of a dwelling on the same two grounds as mentioned above:[3]  (1) the trial court erred in denying a motion to dismiss based on the IAD, in violation of the right to due process

---

[3] Petitioner abandoned his remaining claims.  See the Court's Order (Doc. #23).

of law guaranteed by the Sixth and Fourteenth Amendments, and (2) the ineffective assistance of counsel for failure to file a motion to dismiss under Article IV of the IAD, in violation of the right to due process of law as guaranteed by the Sixth and Fourteenth Amendments.

On October 10, 2006, Respondents filed their Answer to Petition for Writ of Habeas Corpus (Doc. #9) (hereinafter Response). It was followed, on October 13, 2006, with Exhibits (Doc. #11). (hereinafter Ex.). Petitioner's Reply Brief (Doc. #15) was filed on November 29, 2006. See the Court's Order (Doc. #4). Petitioner filed an Appendix (Doc. #15).

### III. Procedural History in Case No. 3:06-cv-90

Petitioner was charged by Information with failure of defendant on bail to appear. App. A. He was found guilty and sentenced as a habitual offender to ten years in prison. App. B at 2. One of the issues he raised on appeal was "the lower court reversibly erred in denying the motion to dismiss filed January 9, 2001, pursuant to the Interstate Agreement on Detainers." Id. at i. The state answered. App. C. Petitioner replied. App. D. On October 23, 2002, the First District Court of Appeal affirmed per curiam. App. E; Griffin v. State, 831 So.2d 180 (Fla. 1st DCA 2002). The mandate issued on November 8, 2002. App. F.

Petitioner filed a Motion for Post Conviction Relief in the circuit court, and one of the claims was that trial counsel was

ineffective for failing to file a motion to dismiss based on Article IV of the IAD, claiming a denial of due process under the Sixth and Fourteenth Amendments. App. H at 1-10. The state responded. <u>Id</u>. at 94-99. The circuit court denied the Rule 3.850 motion on August 4, 2004. <u>Id</u>. at 108-114. Petitioner moved for rehearing, <u>id</u>. at 224-34, and rehearing was denied. <u>Id</u>. at 267. Petitioner moved for rehearing again, <u>id</u>. at 245-58, and rehearing was denied. <u>Id</u>. at 273. Petitioner appealed, App. I, and the First District Court of Appeal affirmed per curiam on February 14, 2005. App. J; <u>Griffin v. State</u>, 895 So.2d 409 (Fla. 1st DCA 2005). The mandate issued on March 14, 2005. App. K.

Petitioner filed a Petition for Writ of Habeas Corpus in the First District Court of Appeal. App. O. It was denied on May 23, 2005. App. P. He also filed a Petition to Invoke All Writs Jurisdiction. App. Q; App. R. It was dismissed for lack of jurisdiction by the Supreme Court of Florida on March 1, 2006. App. S.

### IV. Procedural History in Case No. 3:06-cv-459

Petitioner was charged by a Third Amended Information with burglary of a dwelling. Ex. A. Petitioner was found guilty by a jury, he was adjudicated guilty and sentenced to fifteen years in prison as a habitual felony offender. Ex. B. In one of his grounds on direct appeal, he asked "whether the trial court erred in denying the motion to dismiss filed January 9, 2001, pursuant to

the Interstate Agreement on Detainers?"  Ex. C at i.  The state responded.  Ex. D.  The First District Court of Appeal affirmed per curiam on September 6, 2002.  Ex. E.  The mandate issued on September 24, 2002.  Ex. F.

Petitioner filed a Motion for Post Conviction Relief on December 23, 2002.  Ex. G.  One of the issues he raised was a claim of denial of effective assistance of counsel for failure to file a motion to dismiss pursuant to Article IV(c) of the IAD, claiming a violation of his rights under the Sixth and Fourteenth Amendments. Id.  He supplemented the motion.  Ex. H.  The state responded Ex. I.  Petitioner replied.  Ex. J.  The circuit court denied the motion.  Ex. K.  Petitioner appealed, Ex. L, and the First District Court of Appeal affirmed per curiam on July 26, 2005.  Ex. N.  The mandate issued on August 23, 2005.  Response at 2.

## V.  Timeliness

Respondents concede that the Petitions are timely.  See Answer at 2-3; Response at 2-3.

## VI.  Standard of Review

Since these actions were filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261

F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).   Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> First, § 2254(e)(1) sets a deferential standard of review for factual determinations made by a state court, stating that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); <u>Marquard v. Sec'y for Dep't of Corr.</u>, 429 F.3d 1278, 1303 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, — U.S. —, 126 S.Ct. 2356, 165 L.Ed.2d 283 (2006).
>
> Second, § 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303.   The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d

> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See id</u>. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the

extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## VII.   Ineffective Assistance of Counsel

Petitioner has raised a claim of ineffective assistance of counsel.  As noted previously, the standard of review to be applied is that found in AEDPA.  As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under Strickland v. Washington, supra, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, supra, at 520, 123 S.Ct. 2527 (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." Wiggins v. Smith, supra, at 520-521, 123 S.Ct. 2527 (quoting Williams v. Taylor, supra, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).

> Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct. 2052, with performance being measured against an "objective standard of reasonableness," id., at 688, 104 S.Ct. 2052, "under prevailing professional norms." Ibid.; Wiggins v. Smith, supra, at 521, 123 S.Ct. 2527.

Rompilla v. Beard, 545 U.S. 374, 380 (2005).

The United States Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).

The Eleventh Circuit has expounded upon the deference due to counsel's performance as well as to the state court's decision concerning that performance:

> In assessing [Petitioner's] claim that his trial counsel were ineffective we must keep in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision. Woodford, 537 U.S. at 24, 123 S.Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). [Petitioner] must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 544 U.S. 982 (2005).

The Eleventh Circuit explained the substantial burden of proving an unreasonable performance by counsel:

> The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. See Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Chandler, 218 F.3d at 1313 (quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id.

Osborne v. Terry, 466 F.3d 1298, 1305-06 (11th Cir. 2006), cert. denied, 128 S.Ct. 84 (2007).

## VIII.  Evidentiary Hearing

The issues before the Court are matters of law and no evidentiary hearing is required. The pertinent facts of the case are fully developed in the record before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999). No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S.

467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## IX.  The Law

In Florida, the IAD is codified at § 941.45, Fla. Stat. Article I of § 941.45, Fla. Stat., provides the Policy and Purpose of the interstate compact:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.  Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.  The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

For the purposes of the agreement, "'State' means the United States of America, a state, territory, or possession of the United States, the District of Columbia, or the Commonwealth of Puerto Rico."  Id. at Article II(a).  Concerning a Request for Final Disposition, the compact provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecution officer's jurisdiction written notice of the place of his or her imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint; provided that, for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

Article III(a), § 941.45, Fla. Stat.

The request for final disposition is considered as follows:

Any request for final disposition made by a prisoner pursuant to paragraph (a) shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in

the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If the trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Article III(d), § 941.45, Fla. Stat.

Finally, Article IV, Request for Custody or Availability, § 941.45, Fla. Stat., states in pertinent part:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom the officer had lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon the governor's own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in paragraph (a), the appropriate authorities having the prisoner in

custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.  Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

A detainer has been defined by the Supreme Court as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." Fex v. Michigan, 507 U.S. 43, 44 (1993).  If a request is made under Article III(a) of the IAD, the 180-day time period does not start until the prisoner's request for final disposition of the charges is actually delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.  Id. at 52.

It has been established that while the IAD is a state law, it is also a law of the United States.  Reed v. Farley, 512 U.S. 339,

347 (1994).   But, in order to rise to the level of a Sixth Amendment Speedy Trial Clause claim, there must be a showing of prejudice since violations of the IAD are nonfundamental defects. Id. at 353.   In fact, "IADA violations are uncognizable in habeas proceedings, absent a showing that the violation prejudiced the rights of the accused by 'affect[ing] or impugn[ing] the integrity of the fact finding process' at trial." Hunter v. Samples, 15 F.3d 1011, 1012 (11th Cir. 1994) (per curiam) (citing Seymore v. Alabama, 846 F.2d 1355, 1359 (11th Cir. 1988)).   Thus, Petitioner must show that any violation has "affected or undermined the integrity of the trial." Remeta v. Singletary, 85 F.3d 513, 519 (11th Cir. 1996), cert. denied, 520 U.S. 1147 (1997).   For example, in Seymore v. Alabama, 846 F.2d 1355, 1360 (11th Cir. 1988), cert. denied, 488 U.S. 1018 (1989), the court found that no relief was warranted because Seymore failed to demonstrate that he suffered any prejudice in defending himself against the robbery charges due to the violation of the IAD.

Finally, negligence on the part of the sending state is not a justifiable reason for dismissal under the IAD.   See United States v. Pena-Corea, 165 F.3d 819, 821-22 (11th Cir. 1999) (per curiam) (rejecting a claim that the Government should be held responsible for a custodian state's failure to serve a federal detainer and to advise the inmate of the right to demand a trial).

## X. Findings of Fact and Conclusions of Law, Ground One

### A.   Exhaustion and Procedural Default

Respondents assert that Petitioner did not raise a federal issue on direct appeal in both cases, even though there were citations to <u>Fex v. Michigan</u> in the appeal briefs.  The Supreme Court of the United States, in addressing the question of exhaustion, explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citation omitted)).  To provide the State with the necessary "opportunity," **the prisoner must "fairly present" his claim in each appropriate state court** (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.  <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (emphasis added).

In <u>Baldwin</u>, the Supreme Court recognized a variety of ways a federal constitutional issue could be fairly presented to the state court:  by citing the federal source of law, by citing a case deciding the claim on federal grounds, or by labeling the claim "federal."  <u>Id</u>. at 32.

- 16 -

This Court is not convinced that Petitioner failed to exhaust his state court remedies.  Not only did Petitioner cite <u>Fex</u> in both cases, in the Reply Brief (Case No. 3:06-cv-90) he cited <u>Hunter v. Samples</u>, 15 F.3d 1011 (11th Cir. 1994).  The argument was clearly made in both cases on direct appeal that the time limits under the IAD had lapsed prior to trial.

The Court finds Petitioner exhausted his state court remedies and has not procedurally defaulted ground one in Case No. 3:06-cv-90 and in Case No. 3:06-cv-459.  Petitioner fairly presented his claim in the state appellate court, alerting the court to the federal nature of his claim.

**B.   Not Cognizable in Federal Habeas Corpus Absent Prejudice**

Respondents argue, with respect to both cases, that the IAD issue is not cognizable in a federal habeas corpus case absent a showing of prejudice.  Based on the law of this Circuit, the Court is convinced that Petitioner has not raised a cognizable claim.

In <u>Remeta</u>, 85 F.3d at 517 (footnote omitted), the Eleventh Circuit discussed the IAD:

> The IAD is a compact entered into by forty-eight states and the United States for the purpose of disposing efficiently of outstanding criminal charges brought against prisoners incarcerated in other jurisdictions. <u>Hunter v. Samples</u>, 15 F.3d 1011, 1012 (11th Cir. 1994).  The central provisions of the IAD are Articles III and IV.  Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer.  <u>United States v. Mauro</u>, 436 U.S.

340, 351, 98 S.Ct. 1834, 1842, 56 L.Ed.2d 329 (1978).  If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days.  Id., 436 U.S. at 351-53, 98 S.Ct. at 1843.  The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that state, and is deemed to be a waiver of extradition.  Id.  Under Article IV, a signatory jurisdiction that has filed a detainer may receive temporary custody of a prisoner incarcerated in another jurisdiction, and then prosecute that prisoner for outstanding charges. Hunter, 15 F.3d at 1012.

As in Remeta, 85 F.3d at 519, Petitioner has neither alleged or shown that the alleged IAD violations affected or undermined the integrity of the trials.  "[A]ssuming arguendo, that Florida did fail to abide by its obligations under the IAD, there is no indication from either the records or briefs that the integrity of the trial itself was undermined." Id.  This is true in both Case No. 3:06-cv-90 (the failure to appear case) and Case No. 3:06-cv-459 (the burglary case).

Petitioner has not asserted that the fact-finding process was affected or impugned in either case.  There are no allegations that any IAD violation resulted in witnesses being unavailable or any other forms of prejudice surfacing.  Petitioner's assertion of a technical violation of the IAD does not rise to the level of a

fundamental defect cognizable in a federal habeas corpus proceeding.[4]

## C. Time Limit

In the alternative, the Court will address ground one. Respondents assert that the IAD time limits were never triggered because Petitioner never sent a request for final disposition of his Clay County charges to the Clay County authorities.

## (1) Case No. 3:06-cv-90

Petitioner filed a Motion to Dismiss Information and Discharge Defendant, claiming that he had filed a request for disposition of all charges on April 20, 2000. App. L. The circuit court, in denying the motion, found that the following facts were established at the hearing:

> A. The Defendant was incarcerated at Huntsville, Texas, by the Texas Department of Criminal Justice.
>
> B. While the Defendant was serving his prison sentence in Texas, the Defendant filed a document entitled: Inmates Notice of Place of Imprisonment and Request For Disposition of Indictments, Informations or Complaints.
>
> C. The Notice, signed by the Defendant and dated April 20, 2000 reads: "I hereby request that final disposition be made of the following indictment, informations or complaints now pending against me: Sheriff's

---

[4] Petitioner's assertion in his Replies that his cases would have been dismissed based on the IAD time-limitation having expired is not the type of required prejudice which would actually affect or impugn the integrity of the fact finding process at the trial itself. Therefore, his argument will not prevail.

Office, Saint Augustine, Florida, Burglary of a Dwelling, and Grand Theft of the First Degree".

D.   The notice, signed by the Defendant, was also accompanied by a Certificate of Inmate Status dated May 3, 2000.  This certificate states:  (7)  Detainers currently on file against me from your state are as follows:  Sheriff's Office, St. Augustine, Florida, Burglary of a Dwelling, and Grand Theft.

E.   The above documents were sent only to the Sheriff's Office of St. Johns County located at 4015 Lewis Speedway, St. Augustine, Florida 32095 on May 9, 2000.

F.   None of the above documents, the Request for Disposition of Indictments (Form I), Certificate of Inmate Status (Form III), or otter [sic] to Deliver Temporary Custody (Form IV) were sent to the Clay County Sheriff's Office, the State Attorney's Office of the Fourth Judicial Circuit, or this Court.

App. M at 19.

In its Findings of Fact and Conclusions of Law, the trial court concluded that the documents required by the IAD were never sent to the court and the prosecutor in Clay County, Florida, and the Petitioner did not comply with the procedures under the IAD with respect to detainers on him from Clay County, Florida, citing Fex v. Michigan, 507 US. 43 (1993) and Segroves v. State, 629 So.2d

967 (Fla. 5th DCA 1993).  App. M at 20; App. N.[5]  With that, the court found that the 180-day time period did not apply.  Id.

The issue was raised on appeal.  App. B.  This decision was affirmed on appeal.  App. E.

**(2) Case No. 3:06-cv-459**

Petitioner filed a Motion to Dismiss and Discharge Defendant and a Motion for Discharge Under Rule 3.191.  Ex. Q.  The facts established at the hearing were the same as outlined above in the other case.  Ex. R.  The conclusions were the same as stated above.[6]  Ex. S.  The issue was raised on appeal.  Ex. C.  The appellate court affirmed.  Ex. E.

**(3) Conclusion**

Petitioner has not cited any controlling United States Supreme Court precedent in support of his claim that his notice to St.

---

[5] The Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition is contained in Petitioner's Exhibit G.  The only untried indictment, informations or complaints listed were "Sheriff's Office (Saint Augustine, Florida) Burglary of a Dwelling and Grand Theft of the First Degree[.]"  Id.  The Inmates Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints, signed by Petitioner on April 20, 2000, requests the final disposition "of the following indictments, informations or complaints now pending against me: Sheriff's Office Saint Augustine, Florida Burglary of a Dwelling, and Grand Theft of the First Degree[.]"  Petitioner's Exhibit E. The Certificate of Inmate Status apparently mentioned only the St. Augustine detainers/charges.  App. M at 19.

[6] Although page two of Ex. R is missing, the document is the same as App. M in Case No. 3:06-cv-90, which contains the second page.  See the dual style containing both state court Case Nos. 98-1475-CF and 97-914-CF.

Johns County constituted notice to Clay County.  Instead, he relies on a state court case, State v. Wiggins, 425 So.2d 621 (Fla. 4th DCA 1983), a case which apparently did not persuade the First District Court of Appeal that the trial court's decisions concerning the motions to dismiss in Petitioner's cases were wrongly decided.  The circuit court relied on Fex, 507 U.S. at 52, which states that the time period does not commence until the request for final disposition of the charges is actually delivered "to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."  The circuit court interpreted this to mean that Petitioner had to notify the circuit court in Clay County and the prosecuting officer in Clay County with regard to any detainers lodged by Clay County authorities.  The request for disposition signed by Petitioner does not mention the Clay County detainers and the request for disposition was not sent to the Clay County officials.

Without more, this Court is bound to give the state court rulings deference pursuant to AEDPA.  The decisions of the trial court and the First District Court of Appeal are entitled to deference under AEDPA.  The adjudication of the state trial and appellate courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground one because the state courts'

decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## XI.  Findings of Fact and Conclusions of Law, Ground Two

In his second ground, Petitioner asserts that his counsel was ineffective for failing to move to dismiss the information under Article IV of the IAD.  This issue was raised in Petitioner's post conviction motions.  App. H; Ex. G.  Petitioner referenced the Sixth and Fourteenth Amendments in his motions in support of his claim.  Respondents concede this is sufficient to preserve his constitutional claim.

In addressing this claim in the failure to appear case, the trial court applied the standard under <u>Strickland</u> to review Petitioner's claim of ineffective assistance of counsel.  In denying his claim, the court stated:

> In the Defendant's first ground for relief, he alleges that counsel rendered ineffective assistance for failing to file a Motion to Dismiss the Information pursuant to Article IV(c) of the Interstate Agreement on Detainers codified at section 941.45, Florida Statutes (1998).  The Defendant argues that counsel should have filed a Motion to Dismiss the Information on the ground that his trial in the instant case had not commenced within 120 days of the Defendant's arrival in the State of Florida.  Initially, this Court notes that the Defendant concedes in his Motion that he was transported from the State of Texas to

- 23 -

the St. Johns County Jail pursuant to a Request for Temporary Custody filed by Bryan Shorstein, Assistant State Attorney for the Seventh Judicial Circuit in and for St. Johns County, Florida. (Defendant's Motion at 3.) Further, the Defendant's Exhibit "#1" to his Memorandum of Law in Support of Motion for Post Conviction Relief shows that Mr. Shorstein requested custody of the Defendant on charges of Burglary of a Dwelling and Grand Theft of the Third Degree. Finally, this Court notes that the Defendant concedes that he was transferred to the Clay County Jail, in the Fourth Judicial Circuit in and for Clay County, Florida pursuant to an Order of Transport issued on June 30, 2000. (Defendant's Motion at 3.)

The Defendant's contention that the State Attorney's Office for the Fourth Judicial Circuit in and for Clay County, Florida was subject to the provisions of Article IV of Interstate Agreement on Detainers is without merit. The Defendant's own exhibits attached to his Memorandum in support of the instant Motion clearly establish that the Office of the State Attorney for the Seventh Judicial Circuit in and for St. Johns County requested custody of the Defendant from the State of Texas and, therefore, the pending charges against the Defendant in St. Johns County were subject to the speedy trial provisions of Article IV(c). (Defendant's Exhibits "#1," "1A.") The Defendant was arrested in the instant case and Case No.:97-914-CF-A at the Clay County Jail on July 3, 2000, after being transported from the St. Johns County Jail. Exhibits "B," "C.") The Defendant was not transported from the State of Texas to answer the outstanding charges in Clay County, Florida, and, therefore, the provisions of Article IV of the Interstate Agreement on Detainers do no apply to the instant case. Accordingly, the Defendant has failed to establish that counsel's failure to file a Motion to Dismiss the Information pursuant to the provisions of Article IV(c) of the Interstate Agreement on Detainers was outside

the wide range of reasonable professional
assistance.  Strickland, *supra*[.]

App. H at 109-10.

In the burglary case, the trial court, in denying the Rule
3.850 motion said:

In the Defendant's first ground for
relief, he alleges that counsel rendered
ineffective assistance for failing to file a
Motion to Dismiss the Information pursuant to
Article IV(c) of the Interstate Agreement on
Detainers codified at section 941.45, Florida
Statutes (1998).  The Defendant argues that
counsel should have filed a Motion to Dismiss
the Information on the ground that his trial
in the instant case had not commenced within
120 days of the Defendant's arrival in the
State of Florida.  Initially, this Court notes
that the Defendant concedes in his Motion that
he was transported from the State of Texas to
the St. Johns County Jail pursuant to a
Request for Temporary Custody filed by Bryan
Shorstein, Assistant State Attorney for the
Seventh Judicial Circuit in and for St. Johns
County, Florida.  (Defendant's Motion at 3.)
Further, the Defendant's Exhibit "#1" to his
Memorandum of Law in Support of Motion for
Post Conviction Relief shows that Mr.
Shorstein requested custody of the Defendant
on charges of Burglary of a Dwelling and Grand
Theft of the Third Degree.  Finally, this
Court notes that the Defendant concedes that
he was transferred to the Clay County Jail, in
the Fourth Judicial Circuit in and for Clay
County, Florida pursuant to an Order of
Transport issued on June 30, 2000.
(Defendant's Motion at 3.)

The Defendant's contention that the State
Attorney's Office for the Fourth Judicial
Circuit in and for Clay County, Florida was
subject to the provisions of Article IV of
Interstate Agreement on Detainers is without
merit.  The Defendant's own exhibits attached
to his Memorandum in support of the instant

Motion clearly establish that the Office of the State Attorney for the Seventh Judicial Circuit in and for St. Johns County requested custody of the Defendant from the State of Texas and, therefore, the pending charges against the Defendant in St. Johns County were subject to the speedy trial provisions of Article IV(c). (Defendant's Exhibits "#1," "1A.")  The Defendant was arrested in the instant case and Case No. 98-1475-CFA at the Clay County Jail on July 3, 2000, after being transported from the St. Johns County Jail. (Exhibits "C," "D.")  The Defendant was not transported from the State of Texas to answer the outstanding charges in Clay County, Florida, and, therefore, the provisions of Article IV of the Interstate Agreement on Detainers do no apply to the instant case. Accordingly, the Defendant has failed to establish that counsel's failure to file a Motion to Dismiss the Information pursuant to the provisions of Article IV(c) of the Interstate Agreement on Detainers was outside the wide range of reasonable professional assistance. <u>Strickland</u>, *supra*[.]

Ex. K at 192-93.

As noted by Respondents, there is no Supreme Court precedent precisely on point concerning the proper application of Article IV under the circumstances presented in these cases.  When such is the case, the Eleventh Circuit has provided this guidance:

In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion ... is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir.2000). Washington does not cite any Supreme Court precedent that has held that playing the audio portion of a videotape, without an opportunity to cross-examine the speaker, violates a defendant's Confrontation

Clause rights. Thus, we conclude that the Florida state court's decision cannot be "contrary to" clearly established federal law as determined by the Supreme Court. *Cf.* Isaacs v. Head, 300 F.3d 1232, 1252 (11th Cir.2002) (holding that Georgia Supreme Court's decision was not contrary to clearly established federal law because neither the petitioner nor the federal court found any Supreme Court precedent to support the petitioner's assertion). Because the district court erred in its application of the ADEPA standard of review, we reverse the district court's order granting Washington federal habeas relief and remand this case with directions that judgment be entered in favor of the State.

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.) (footnote omitted), cert. denied, 540 U.S. 965 (2003).

The circuit court's decisions were not contrary to clearly established Federal law in the cases at bar. Moreover, the First District Court of Appeal affirmed the circuit court's decisions. App. J; Ex. N.

Here, counsel was not ineffective for failing to file a motion to dismiss pursuant to Article IV(c) of the IAD. Obviously, the trial judge was of the opinion that Petitioner was not brought to Florida under a request for custody or availability by Clay County authorities. Clearly, the request came from St. Johns County. The Clay County authorities were not sent the appropriate certificate or the notice informing them of the request for custody or

availability from Texas.[7]  See Article IV(b), §941.45, Fla. Stat.
This information was sent only to St Johns County.  As a result, a
motion to dismiss under Article IV would not have been well
received by the trial court, as evidenced by the denial of the Rule
3.850 motion.

The decisions of the trial court and the First District Court
of Appeal are entitled to deference under AEDPA.  The adjudication
of the state trial and appellate courts resulted in decisions that
involved a reasonable application of clearly established federal
law, as determined by the United States Supreme Court.  Therefore,
Petitioner is not entitled to relief on ground two because the
state courts' decisions were not contrary to clearly established
federal law, did not involve an unreasonable application of clearly
established federal law, and were not based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceedings.

Any other claims raised by Petitioner not specifically
addressed herein are found to be without merit.  Consequently, for
all of the above-stated reasons, the Petitions will be denied and
the cases will be dismissed with prejudice.

Accordingly, it is now

**ORDERED**:

---

[7]  Again, negligence of a sending state would not be a
justifiable reason for dismissal pursuant to the provisions of the
IAD.

1.    The Petition for Writ of Habeas Corpus (Doc. #1) in Case No. 3:06-cv-90-J-12MCR, filed January 26, 2006, pursuant to the mailbox rule, is **DENIED WITH PREJUDICE**, and the case is hereby **DISMISSED WITH PREJUDICE**.

2.    In Case No. 3:06-cv-90-J-12MCR, the Clerk of the Court shall enter judgment denying the Petition with prejudice and dismissing the case with prejudice.

3.    The Clerk of the Court shall close Case No. 3:06-cv-90-J-12MCR.

4.    The Petition for Writ of Habeas Corpus (Doc. #1) in Case No. 3:06-cv-459-J-12JRK, filed May 16, 2006, pursuant to the mailbox rule, is **DENIED WITH PREJUDICE**, and the case is hereby **DISMISSED WITH PREJUDICE**.

5.    In Case No. 3:06-cv-459-J-12JRK, the Clerk of the Court shall enter judgment denying the Petition with prejudice and dismissing the case with prejudice.

6.    The Clerk of the Court shall close Case No. 3:06-cv-459-J-12JRK.

7.    The Order Denying the Petitions shall be docketed in Case No. 3:06-cv-90-J-12MCR and Case No. 3:06-cv-459-J-12JRK.

**DONE AND ORDERED** at Jacksonville, Florida, this __15th__ day of October, 2008.

*Howell W. Melton*

HOWELL W. MELTON
United States District Judge

sa 10/1
c:
Robert Henry Griffin, Jr.
Ass't A.G. (Pate)